### HICKS and Wife *v.* JENNINGS.

*(Circuit Court, N. D. Georgia.   October, 1880.)*

1 MORTGAGE—FORECLOSURE—FRAUD.—Several tracts of land were sold under one contract, and separate deeds naming a distinct consideration were given for each tract. *Held,* that fraud and want of consideration in the sale of one tract could be set up as a defence in a suit to foreclose a purchase-money mortgage upon another of such tracts.

2. SAME—SAME—SAME.—*Held, further,* that such defence could be set up against the heirs and distributees of the mortgagor, where such mortgage had been transferred to them as an advancement.

In Equity.

The purpose of this suit is to foreclose a mortgage executed by the defendant to one Henry Irby, now deceased, dated May 7, 1877, on certain lots of land in Hall county, Georgia, known as the "Glade Mines," and containing 2,000 acres, to secure a note dated the said May 7, 1877, made by

said Jennings, and payable to said Irby, for $10,000, and fall-ing due January 1, 1879. The note recited on its face that it was given for part of the purchase price of the Glade mines, in Hall county, Georgia. Upon this note the defendant paid, on December 31, 1878, the sum of $5,000 principal, and all the interest due up to that date; and, by an indorsement made on the mortgage by the payee of said note, the time for the payment of the note was extended to January 1, 1880. The bill alleged that in January, 1879, Henry Irby, the payee of said note, assigned said note and mortgage to the complainant Royal B. Hicks, and delivered the same to the complainant Sarah Jane Hicks, who was his daughter, as an advancement to her out of his estate, and the same was then and there accepted by her as such; that on February 20, 1879, said Henry Irby departed this life, and afterwards, on April 7, 1879, John F. Irby, who was a son, and C. L. Walker, who was a son-in-law, of said Henry Irby, for the purpose of carrying out the wishes of said Henry Irby in ref-erence to said note, signed a transfer of all their interest in the same to complainant Royal B. Hicks, and authorized him to receive the money due on the same. The considera-tion of this transfer by John F. Irby and Walker was an agreement on the part of Sarah Jane Hicks to accept said note as an advancement, and account for the same in the final settlement of Henry Irby's estate; and the complainants, Hicks and wife, agreed to pay over to John F. Irby, and to C. L. Walker, for his wife, Agnes Walker, $10,000 belonging to the estate of Henry Irby, then on deposit in a bank in the city of Atlanta. Of this sum $5,000 was actually paid on July 18, 1879.

The defence relied on is stated substantially as follows: On April 27, 1877, the defendant entered into a contract in writing with the said Henry Irby for the purchase of cer-tain mining lands in Georgia, then owned by said Irby. There were two tracts in Hall county, known respectively as the Glade mines and Chapman mines, each containing 1,000 acres, and lying contiguous to each other, and all designated as the Glade mines in said contract; and lot No. 133 of the

seventeenth district in Fulton county, Georgia. For these lands the defendant Jennings agreed to pay the sum of $30,-000, as follows: $10,000 on the delivery of deeds; $5,000 on July 1, 1877; $5,000 on January 1, 1878; and the remaining $10,000 at any time during the year 1878; and for that part of the purchase money which was unpaid, a mortgage was to be given on the Glade mines. When deeds were made by Henry Irby to Jennings for those lands, in pursuance of this contract, the parties required that the purchase money should be divided into three parts—$10,000 for the Glade mines; and the like sum, each, for the Chapman mines, and for lot No. 133 in Fulton county. Three separate deeds were made—two for the Hall county lands, and one for lot 133 in Fulton county. Ten thousand dollars was paid by Jennings to Irby on the delivery of the deeds, and a mortgage given on the Hall county lands to secure the residue of the purchase money, which was evidenced by two notes for $5,000 each, and one note for $10,000. The two $5,000 notes were paid at or before maturity, and a payment was made on the $10,-000 note of $5,000, and all interest up to January 1, 1879.

The defendant alleges that in the treaty for the purchase of these lands Henry Irby represented that the said lot 133, in Fulton county, contained a valuable silver mine, and was worth $15,000 or $20,000, and that upon the strength of these assurances he agreed to give, without any examination of the Fulton county lands, $30,000 for the three tracts of land, estimating lot 133 as worth at least $10,000, and believing it to be worth $15,000; and that he would not have purchased said lot 133, in Fulton county, or the said Hall county lands, but for the statements of said Henry Irby in reference to the value of said lot 133. He declares that he relied implicitly on the representations of Irby in relation to said lot 133, and had no opportunity to examine the same. Said lot was about 70 miles distant from the place where the contract of purchase was made.

The defendant says that all the statements of said Irby in reference to the value of said lot 133 were false, and Irby knew them to be false when he made them; that, so far

from its being true that said lot contained a valuable silver mine, there was not a trace of silver or other precious metal to be found upon said land, and, so far from its being worth $15,000 or $20,000, it was not worth more than three dollars an acre,—in the aggregate about $600; and he claims that thence, by reason of said fraud, there should be no decree for complainants on said note and mortgage.

*D. F. Hammond* and *W. R. Hammond,* for complainants.

*J. B. Estes, Claude Estes,* and *L. J. Gartrell,* for defendant.

Woods, C. J.   The evidence leaves no doubt that Henry Irby, in his treaty with Jennings for a sale of the lands, mentioned in the answer of defendant, fraudulently misrepresented the value of lot 133 in Fulton county.   The fact that a careful examination of the lot, and an assay of ores found upon it, shows that not a trace of any precious metal exists upon it, stamps the statements made by Irby to Jennings, in reference to its value, with falsehood and fraud.   So far from being worth $15,000 or $20,000, on account of the deposits of silver to be found on it, as asserted by Irby, it is not worth over $500 or $600.   Irby must have known that his representation was false, for he told Jennings that he had procured an assay of the ore taken by himself from the lot to be made, and that it proved to be rich in silver.   The evidence shows that the lot 133 formed at least a third of the entire consideration given for all the lands sold by Irby to Jennings.   If this suit were prosecuted by Irby, and if it were based on a note given for the purchase price of lot 133, there could be no question that the defence set up in the answer and established by the proof, showing the wilful fraud and misrepresentation of Irby, ought to prevail.   But the suit is for foreclosure of a mortgage, executed to secure a note, given, as expressed on its face, for the purchase money of the Glade mines, and it is prosecuted, not by Irby, but by one of his heirs, to whom he transferred the note in his life-time, and who, at the time of the transfer and since his death, has agreed to consider it as an advancement on his share of his father's estate.

This state of facts raises two questions:

(1) Can the fraud of Irby, and the failure of the consideration in the sale of lot 133, be set up as a defence to a suit to foreclose the mortgage on another tract of land executed to secure a note given for the purchase price of that other tract? The evidence makes it clear that the purchase of the three tracts of land was one transaction. It was provided for in one instrument, and one gross sum named for all the lands which Irby agreed to convey. It is true that, in arriving at this gross sum, estimates were put on each tract, and that, when the written contract came to be executed, three separate deeds were made for the three tracts respectively, and a consideration of $10,000 named in each. The deeds were all made, the cash instalment paid, and the mortgage executed at the same time. Now, if Irby himself were seeking to foreclose this mortgage, it is quite apparent that his fraud in selling lot 133 for $10,000, which had been paid, might be set up as a defence against his recovery of the same amount as the consideration for another of the tracts sold by the same contract. In an action at law the defence might be restricted to the note sued on; but not so in a court of equity, which always looks at the substance of things, and seeks to do complete justice between the parties.

A court of equity would not allow a decree upon the note and mortgage in suit, and then turn the defendant over to another suit to recover the amount out of which he had been wronged by the fraud and falsehood of the complainant. Having the parties before it, it would adjust the controversies between them, springing out of the same transaction, according to equity and good conscience; and this would be to refuse a decree on this note and mortgage in consideration of the fact that the complainant had already defrauded the defendant, in the same contract out of which the note and mortgage sprung, to an equal or greater amount. Upon the facts of the case, therefore, if Henry Irby were the complainant, no decree should be made in his favor.

(2) The next question is, can the defence which the defendant could have set up against the note and mortgage, if the

suit to foreclose were prosecuted by Irby, be set up against his heirs and distributees? The transfer of the note by Henry Irby in his life-time to Sarah Jane Hicks, his daughter, was not for value; it was a mere gift. The rule is that a negotiable instrument, in order to be operative in the hands of an indorsee as against equities and defences existing between the maker and payee, must have been taken by the indorsee for value; that is, he must have parted with something valuable therefor at the time of the transfer. *Park Bank* v. *Watson*, 42 N. Y. 490.

Neither Sarah Jane Hicks nor her husband, Royal B. Hicks, paid anything for the note at the time of its transfer by Henry Irby. They parted with nothing of value as a consideration for the transfer. The same defences against the note were therefore open to the maker as if it had remained in the hands of the original payee. The agreement made between Hicks and wife, and the other heirs and distributees of Irby's estate, after Irby's death, did not change the terms on which Hicks and wife had received the transfer of the note and mortgage. They agreed to consider them as an advancement, and they had received them from Henry Irby as an advancement. The contract between them and the other heirs and distributees provided that in case of any recovery against the estate of Henry Irby, reducing the distributive shares of the heirs, they, the said heirs, would "refund their *pro rata* shares of such recovery to an extent sufficient to save indemnified and harmless the legatees of said estate, and make all parties interested therein equal." A fair construction of this contract would require, in case of a failure to collect the note in suit by reason of the defences set up, the answer that the residue of the estate should be equally divided between all the distributees, so as to give each an equal share. In any view that may be taken, the complainants neither paid nor surrendered anything of value for the transfer of the note and mortgage. The same defences are therefore open to the maker of the note as if the suit were prosecuted by Henry Irby in person.

The defendant Jennings, after setting forth in his answer

his defence to the case made by the bill, attempts, by calling his answer an answer in the nature of a cross-bill, to make the complainant Hicks, in his capacity of administrator of the estate of Henry Irby, a party to the original bill, and asks a decree against him, as such administrator, for the $5,000 paid upon the note and mortgage on which the suit is based, with interest. An answer in the nature of a cross-bill is authorized by the Code of Georgia, but no such pleading is recognized by the equity practice of the United States courts. If the defendant had filed a formal cross-bill he could only make either the complainants or other defendants, if any, or both, parties defendant to his cross-bill. He cannot introduce a new party and ask relief against him. By asking relief against Hicks, as administrator of Irby, the defendant seeks to bring into the litigation a new party, and to obtain a decree against him alone. This is not permissible. The other parties to the case are not to be involved by the filing of a cross-bill in a controversy between one of the defendants and a stranger to the original litigation, in which they have no interest and to which they are not necessary or proper parties.

There can, therefore, be no decree in favor of the defendant against Henry Irby's administrator, as prayed for in the answer. There will be a decree dismissing the bill of complainants at their costs, and dismissing the claim of the defendant set up in his answer in the nature of a cross-bill, without prejudice to a suit upon the same by defendant against Henry Irby's administrator.